```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:
                                                            Case No. 8-16-71614-reg
FEIGE S. ZARETSKY,                                          Chapter 7

                    Debtor.
----------------------------------------------------------X
ELLIOT ZARETSKY, HAROLD ZARETSKY,
SHIRLEY ZARETSKY, AND MAXI-AIDS, INC.,

                    Plaintiffs,                             Adv. Pro. No. 8-16-8110-reg

          -against-

FEIGE S. ZARETSKY,

                    Defendant.
----------------------------------------------------------x
```

## DECISION AFTER TRIAL

This matter is before the Court pursuant to an adversary proceeding commenced by Elliot Zaretsky, Harold Zaretsky, Shirley Zaretsky, and Maxi-Aids, Inc. (the "Plaintiffs") against Feige S.Zaretsky (the "Debtor" or "Defendant") seeking a determination that prepetition judgments in the aggregate sum of $1,290,000.00, plus interest and fees, entered against the Debtor in a state court defamation action are non-dischargeable under section 523(a)(6) of the Bankruptcy Code. This section provides that a debtor may not be discharged from debt incurred based on liability "for willful and malicious injury by the debtor to another entity or to property of another entity." 11 U.S.C. § 523(a)(6). In a prior adversary proceeding in the related bankruptcy case of Ahron Berlin (the "Berlin Adversary Proceeding"), these judgment debts were deemed non-dischargeable as to the Debtor's father after a trial. The trial transcript from the Berlin

Adversary Proceeding was made a part of the record in this adversary proceeding, along with other exhibits introduced by the Plaintiffs. Based on the record before the Court, including the exhibits admitted at trial, the Court concludes that the Defendant's conduct regarding the defamatory statements was willful and malicious as to each plaintiff. Therefore, the debts owed by the Debtor to the Plaintiffs as set forth in the state court judgment are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**PROCEDURAL HISTORY**

On April 13, 2016, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. On July 22, 2016, the Plaintiffs filed this adversary proceeding against the Debtor. On August 23, 2016, the Debtor filed an answer with affirmative defenses and one counterclaim alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") by the Plaintiffs.[1] On February 20, 2018, the Plaintiffs filed a Pretrial Statement, and on February 20, 2018 a trial was held on the issues raised in the complaint. The Plaintiffs introduced fifteen exhibits which were admitted without objection. The Debtor did not file a Pretrial Statement, introduced no exhibits and called no witnesses. At the conclusion of the trial, the matter was marked submitted.

**FACTS**

Elliot Zaretsky ("Elliot") is the founder and owner of Maxi-Aids, Inc. ("Maxi-Aids"), a company that sells equipment and products designed to enhance the lifestyles of individuals with

---

[1] The Plaintiffs did not file a response to the Debtor's counterclaim, and the Debtor did not pursue the allegations in the counterclaim in this adversary proceeding. In light of the Debtor's failure to take any action to prosecute the counterclaim, it is dismissed *sua sponte* under Fed. R. Bankr. P. 7041(a) and pursuant to the Bankruptcy Court's inherent authority to dismiss for lack of prosecution. *LG Capital Funding, LLC v. CardioGenics Holdings, Inc.*, 16-CV-1215-AMD-SJB, 2018 WL 1521861 at *14-15 (E.D.N.Y. Feb. 20, 2018) (citing *Manshul Const. Corp. v. International Fidelity Ins. Co.*, 182 F.3d 900 (2d Cir. 1999)(unpublished table decision) (affirming dismissal by the District of counterclaims under Fed. R. Civ. P. 41(b) for failure to prosecute)).

special needs, such as those who are blind or deaf. Elliot and Shirley Zaretsky ("Shirley") are the married parents of Harold Zaretsky ("Harold"). Harold and the Debtor, who are both deaf, were married and subsequently divorced. The divorce was bitter and contentious.

On September 26, 2008, subsequent to the entry of the judgment of divorce, the Plaintiffs commenced a libel action in the New York State Supreme Court, Nassau County (the "State Court"), against the Debtor and her father, Ahron Berlin (the "State Court Defendants"). The Plaintiffs alleged that the State Court Defendants sought to destroy the Plaintiffs' reputation by sending false and defamatory statements via email to various third parties, including several employees of Maxi-Aids.

The emails were incorporated by reference in the State Court complaint and include the following statements:[2]

  a. "The Zaretskys have no problem coming up with unlimited funds to pay for lawyers and other court expenses, but have trouble coming up with money for this poor deaf starving mother and her three children."
  b. "They brazenly use the courts as a way to try to rid of Faige and use the children as weapons against their own mother."
  c. "We believe the information we are sending to you illustrates that the Zaretsky are experienced in implementing corrupt tactics by manipulating the court system as ping pong balls and instruments of abuse against, Faige Zaretsky, an innocent victim."
  d. "If Harold is mentally incompetent, must the court appoint a representative for him?"

---

[2] Included in the record are six different versions of defamatory emails sent by the Defendant and her father. (Exs. 9 – 14, Ex. 1 (annexed as Ex. G thereto)) This Court has selected several of the dozens of statements contained in one of the emails sent by the Defendant. As there are four Plaintiffs in this case, the Court has included at least one statement made by the Defendant that refers to each of them.

e. "Richard made Feige sign an agreement in those very short moments – to give her children to the heartless Shirley, Harold and Elliot – who cared not one bit about taking children from their mother and killing them with promises of toys and gadgets."

f. "The OWNERS of Maxi-Aid's Corp. began using the army of lawyers of Maxi-Aid's Corp. and all the strategies they learned in 15 years of hostile corporate strategies."

g. "The very same Shameless team of lawyers of Maxi-Aid's Corp. that was convicted in supreme court many times of stilling [sic] from the blind and veterans constantly for more than ten years."

h. "If Elliot and Shirley have no judgment, should the court reward them with de facto custody?"

i. "[The Zaretsky family and Maxi-Aids] 'rerouted' donated most critical medical supplies from poor countries, is an intentionally famed Schemer – debarred from Veterans' Admin contracts – assessed 3 million fine – once filed chapter 11."

The State Court Defendants filed an Answer in the State Court action, and on November 10, 2008, the Plaintiffs moved in the State Court for summary judgment on their defamation claims. The State Court Defendants failed to file a timely opposition. The Plaintiffs' motion was granted on January 9, 2009. (Ex. 2) The matter was referred to a Special Referee for an inquest to determine damages. After a trial on the issue of damages, at which the State Court Defendants did not appear, the Special Referee concluded that Elliot, Harold, and Maxi-Aids each sustained damages in the amount of $380,000.00, and Shirley sustained damages in the amount of $150,000.00. (Ex. 3) The Special Referee's report and recommendations were

adopted by the State Court, and judgment was entered in favor of the Plaintiffs against the State Court Defendants jointly and severally. (Ex. 4) All of the State Court Defendants' motions to vacate the judgment have been denied.

At the trial in this adversary proceeding, the Plaintiffs introduced multiple exhibits, including the full emails referred to above, the pleadings from the State Court proceeding, and the trial transcript from the Berlin Adversary Proceeding, as well as the written opinion *In re Berlin*, 513 B.R. 430 (Bankr. E.D.N.Y. 2014). The only testimony was provided by Elliot Zaretsky, who verified that his testimony would be the same testimony he provided at the trial in the Ahron Berlin Adversary Proceeding. The Debtor, who appeared *pro se* in this matter, was present at the trial and the Court provided her with a sign language interpreter. The Debtor did not testify or introduce any evidence on her behalf at the trial.

## DISCUSSION

### A. The State Court Judgment

As set forth above, the State Court judgment resolved a number of issues, including the Debtor's liability for defamation and the amount of damages. This Court must afford full faith and credit to the State Court judgment, which is *res judicata* as between the Plaintiffs and the Debtor as to both liability and damages. *See In re Krautheimer*, 210 B.R. 37, 52 (Bankr. S.D.N.Y. 1997). *See also Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) ("The bankruptcy court . . . was bound to give preclusive effect to the default judgment obtained in the state court by [the Plaintiff] to the same extent as would a New York court."). Therefore, the issue before this Court is "not whether the state court decision was correct, but whether the state court judgment [is] dischargeable under § 523(a)(6)." *In re Salem*, 290 B.R. 479, 482 (S.D.N.Y.

2003) (citing *Kelleran v. Andrijevic*, 825 F.2d at 694). Because liability for defamation and damages had already been established as a matter of law, the focus of the trial was to determine whether the defamatory statements were made by the Debtor with the requisite intent to render them non-dischargeable under § 523(a)(6).

### B. "Willful" and "Malicious" under 11 U.S.C. § 523(a)(6)

Section 523 of the Bankruptcy Code provides a list of categories of debts that are excepted from a debtor's discharge. Among them are debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The term "entity" includes a person. 11 U.S.C. § 101(15). The burden is on the plaintiff to prove, by a preponderance of the evidence, that this exception to discharge applies. *In re Goldberg*, 487 B.R. 112, 125 (Bankr. E.D.N.Y. 2013) (citing *Grogan v. Garner*, 498 U.S. 279, 289-90 (1991)). "As the consequences to a debtor of finding a debt excepted from discharge are severe, exceptions to discharge are to be narrowly construed and all doubts should be resolved in the debtor's favor." *In re Wisell*, 494 B.R. 23, 34-35 (Bankr. E.D.N.Y. 2011) (citing *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007), *cert. denied*, 555 U.S. 1097 (2009).

The terms "willful" and "malicious" are separate elements that must each be proved. *See In re Salem*, 290 B.R. 479, 485 (S.D.N.Y. 2003) (citing *In re Krautheimer,* 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999)). For purposes of section 523(a)(6), the term "willful" requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998). "Merely showing that a debtor committed a conscious act that resulted in an injury is not sufficient. The act must be shown to have been done with the intent to cause the injury." *Id*.

The term "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti,* 94 F.3d 84, 87 (2d Cir. 1996). "Malice may be constructive or implied . . . . Implied malice may be demonstrated by 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *In re Goldberg*, 487 B.R. at 128 (quoting *In re Stelluti*, 94 F.3d at 88).

### C. Application

Applying these legal standards to the facts in this case, the Plaintiffs have proven by a preponderance of the evidence that the Debtor's conduct was "willful and malicious," within the meaning of § 523(a)(6).

The Plaintiffs allege that the Debtor made the defamatory statements with the intent to injure the Plaintiffs. The Court agrees. The facts of this case and the extreme nature of the defamatory statements leave no doubt that the Debtor sought to harm the reputations of the Plaintiffs. Elliot testified in the Berlin Adversary Proceeding that the Debtor and her father expected to procure $2,000,000 from Elliot's family in connection with the family court proceedings.[3] (Ex 15. p. 71) When Elliot "didn't let him get away with it," the Debtor and her father retaliated by sending the defamatory emails. (Ex. 15. p. 71) The emails insult, disparage, and allege countless wrongdoings by the Plaintiffs. Elliot testified that due to the nature of Maxi-Aids' business, the reputation and good name of his family and of Maxi-Aids were vital to the success of the business. (Ex. 15. p. 22-23) The Debtor and her father also sent several

---

[3] Elliot testified in the Berlin Adversary Proceeding that he knew this because "[t]hat's what [the Debtor] said to his daughter, and his daughter said it to one of her friends, who in turn, my son Harold found out." (Ex. 15 p.71-72) The Debtor did not object to the admissibility of this testimony on any grounds. Therefore, the Debtor waived his right to object to the testimony, and the Court may consider it. *See Cameron Int'l Trading Co., Inc. v. Hawk Importers, Inc.*, 03-CV-02496 JS, 2010 WL 4568980 at *4 (E.D.N.Y. Nov. 2, 2010) *aff'd,* 501 F. App'x 36 (2d Cir. 2012).

emails to employees of Maxi-Aids. (Exs. 9-14)  Elliot testified that the emails affected employee morale and his employees no longer trusted him. (Ex. 15. p. 67)  The Court finds that the Debtor made the defamatory statements with the intent to injure the Plaintiffs, thereby establishing "willfulness" within the meaning of section 523(a)(6).

The Plaintiffs have also established that there was no just cause or excuse for the Debtor's conduct regarding the defamatory statements.  The sheer number and outrageous nature of the statements establish that the Debtor was not merely reckless as to their truth or falsity, but rather knew the statements were false.  For example, the Debtor stated that Harold abused Feige and that Harold was mentally incompetent.  (Ex. 1 [annexed as Ex. G thereto])  The Debtor also accused Maxi-Aids of "rerout[ing] . . . critical medical supplies from poor countries."  Id.  Elliot testified that each and every one of these and other defamatory statements were entirely false. (Ex. 15 p. 50, 54).  Therefore, the Court finds that the Debtor acted with "malice" within the meaning of § 523(a)(6).

It should be noted that the Debtor gave no explanation for her conduct, nor did she present any evidence to rebut the Plaintiffs' showing that his actions were anything other than "willful and malicious."  The Debtor did not call any witnesses and made no arguments in defense of her conduct.  Therefore, the Plaintiffs have met their burden of proof regarding the non-dischargeability of the judgment debts pursuant to 11 U.S.C. § 523(a)(6).

## CONCLUSION

For all of the foregoing reasons, this Court finds that the Plaintiffs have proven that the Debtor's actions were "willful and malicious" within the meaning of 11 U.S.C. § 523(a)(6).  Accordingly, the Plaintiffs' awards against the Debtor in the amounts set forth in the State Court

judgment are non-dischargeable.  The counterclaim asserted by the Debtor is dismissed.  The Court shall enter a judgment consistent with this Decision After Trial.



**Dated: Central Islip, New York**
**May 3, 2018**

　　　　　　　　　　　　　　　　　　　　**Robert E. Grossman**
　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**